**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 27, 2018

# In the Court of Appeals of Georgia

A18A0154. PENNINGTON v. THE STATE.

McFADDEN, Presiding Judge.

Charles Lee Pennington, Jr. appeals from his convictions for trafficking in methamphetamine (OCGA § 16-13-31 (f) (1)) and possession with the intent to distribute of a controlled substance near a school (OCGA § 16-13-32.4). He challenges the sufficiency of the evidence as to both convictions, but the evidence was sufficient to support them. He argues that the trial court erred in striking a prospective juror for cause, but he has not shown that the trial court abused his discretion in striking the prospective juror. Finally, he argues that the trial court erred in failing to charge the jury on an affirmative defense related to the offense of possession with intent to distribute near a school, but he was not entitled to that charge because he did not admit to having committed the offense. So we affirm.

1. *Sufficiency of the evidence.*

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (emphasis omitted).

So viewed, the evidence showed that on September 25, 2014, law enforcement officers, based on a tip, went to property adjacent to an elementary school. Pennington was using a shed on the property as his residence. The shed was less than 100 feet away from the elementary school property.

With Pennington's consent, the officers searched the shed, which was divided into a common area and two bedrooms. The shed appeared to be an active methamphetamine lab, and the smell of chemicals associated with methamphetamine production could be detected inside and outside the shed. Pennington showed the officers a vessel of a type used for manufacturing methamphetamine, which had been

2

hidden behind a dresser in a common area and which contained methamphetamine residue. The officers also found in the common area a bottle of a substance used in methamphetamine production.

In Pennington's room, the officers found numerous empty, unused plastic baggies of a type used in the distribution or storage of drugs, a used plastic baggie containing methamphetamine residue, and a glass pipe with methamphetamine residue on it. The officers also found in Pennington's room equipment and substances used in methamphetamine production. The officers found empty plastic baggies in the other bedroom and empty, discarded containers of substances used in methamphetamine production outside the shed.

(a) *Trafficking*.

Pennington argues that this evidence was insufficient to show that he committed the offense of trafficking in methamphetamine. We disagree. The state charged Pennington with trafficking pursuant to OCGA § 16-13-31 (f) (1), which pertinently provides that "[a]ny person who manufactures methamphetamine . . . commits the felony offense of trafficking methamphetamine" and sets the minimum punishment for such an offense if the quantity of methamphetamine involved is less than 200 grams. The evidence, which included the presence of equipment and

3

supplies for the production of methamphetamine in both the common area and Pennington's room in the shed, authorized the jury to find Pennington guilty of trafficking in methamphetamine. See *State v. Nankervis*, 295 Ga. 406, 410-411 (3) (761 SE2d 1) (2014).

(b) *Possession with intent to distribute near a school.*

We also do not agree with Pennington's argument that the evidence was insufficient to support his conviction for possession of methamphetamine with intent to distribute near a school. OCGA § 16-13-32.4 (a) provides that

> [i]t shall be unlawful for any person to manufacture, distribute, dispense, or possess with intent to distribute a controlled substance or marijuana in, on, or within 1,000 feet of any real property owned by or leased to any public or private elementary school, secondary school, or school board used for elementary or secondary education.

The evidence authorized the jury to find that Pennington was in possession of methamphetamine within 1,000 feet of an elementary school. While only the residue of methamphetamine was found in Pennington's shed at the time of his arrest, there was circumstantial evidence that he had recently possessed methamphetamine, including the presence of equipment and ingredients for manufacturing methamphetamine and the strong odor of methamphetamine that permeated the shed.

4

The state was permitted to prove that Pennington committed this offense on any date within the statute of limitations because the indictment did not allege that the date of Pennington's possession of methamphetamine was material. See *Ledesma v. State*, 251 Ga. 885 (1) (a) (311 SE2d 427) (1984). And there was evidence that he intended to distribute the methamphetamine that had been in his possession, including the presence of unused plastic baggies and the testimony of a law enforcement officer that such baggies often were used for the distribution of drugs. Although, in support of his sufficiency challenge, Pennington points to the absence of digital scales or money in shed, "no bright line rule exists regarding the amount or type of evidence sufficient to support a conviction for possession with intent to distribute." *Jones v. State*, 304 Ga. App. 109, 111 (1) (a) (696 SE2d 665) (2010) (citation and punctuation omitted).

2. *Striking of prospective juror.*

Pennington argues that the trial court erred in striking a prospective juror — Juror 49 — for cause. "Whether to strike a potential juror for cause is a matter for the trial court's sound discretion. As the trial court's conclusion regarding bias is based in part on demeanor and credibility, which are peculiarly within the trial court's province, those findings are to be given deference." *Porter v. State*, 278 Ga. 694, 697

5

(5) (606 SE2d 240) (2004) (citation and punctuation omitted). We will not reverse the trial court's decision to strike a prospective juror for cause absent manifest abuse of discretion. *Gray v. State*, 298 Ga. 885, 887 (2) (785 SE2d 517) (2016).

In an order denying Pennington's motion for new trial, the trial court explained that he decided to strike Juror 49 "based on her multiple objections and statements that she was unable to be fair and impartial." The trial court specifically noted in his order four objections that Juror 49 had made during the voir dire process. The record shows that Juror 49 made the following objections: (1) She stated, "I don't feel that I have the right to determine or make decisions whether a person is innocent or guilty, based on my religion," but did not name her religion during voir dire; (2) she stated that she had been burglarized and indicated that this experience would influence her decision-making process in reaching a fair and impartial verdict; (3) she stated that she had a "forgetful" memory due to a medical condition and medication that she took; and (4) she responded affirmatively to the trial court's general voir dire question whether, "due to philosophical or religious beliefs or any other reason, [anyone could not] consider the evidence and the instructions of the Court and render a verdict of acquittal or conviction in this case, based on the evidence and the applicable law."

The state sought to strike Juror 49 for cause, leading to the following colloquy:

6

The Court: . . . Requests for dismissals for cause from the [s]tate.

[Prosecutor]: Number 3 and number 49.

. . .

[Defense counsel]: Juror number 49 indicated that, I believe on her information form, that she is a Jehovah's Witness and no one really followed up on that. I know we cannot excuse a juror for religious reasons alone. I'm pretty sure that, when she talks about judging, she would be talking about in the religious sense of not judging — judge not —

The Court: We absolutely can dismiss them for that because they can't be fair.

. . .

[Defense counsel]: None of us asked her if she was talking about judging in the scriptural sense — just in the biblical sense.

The Court: She mentioned her religion in connection with that.

[Defense counsel]: Right. I don't know if anyone asked her —

The Court: She objected every possible time, I think, to serving. I'll strike her.

7

[Defense counsel]: The closest that she came —

The Court: No sir. I'm going to strike her. . . . I mean, if y'all hadn't, I would have.

Pennington argues that the trial court improperly struck Juror 49 due to her religious affiliation. But the trial court was authorized to conclude from the objections made by Juror 49 during voir dire that she would not be fair and impartial. See *DeVaughn v. State*, 296 Ga. 475, 477-478 (2) (769 SE2d 70) (2015) (trial court did not abuse discretion in striking for cause prospective juror who stated "that his prior bad experiences with the police and prosecutors might affect his judgment in the case and that he was a minister and would not feel comfortable sitting in judgment of others"); *Robles v. State*, 277 Ga. 415, 419-420 (4) (589 SE2d 566) (2003) (trial court did not abuse discretion in striking for cause prospective juror who said "she would not stand in judgment of another" and another prospective juror who said "she could not stand in judgment of another due to her religious beliefs and would not look at any evidence concerning a burned child"). Moreover, the trial court explicitly stated in his order that he did not strike Juror 49 because of her religion, and the record does not compel us to find otherwise. Two out of the four grounds given by the trial court for his decision had nothing whatsoever to do with religion, and the grounds that

8

implicated religion focused on Juror 49's statement that she could not perform her function as a juror. The record does not show that the trial court manifestly abused his discretion in striking Juror 49 for cause.

We find no merit in Pennington's argument that, under the analysis set forth in *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986), the trial court violated the United States Constitution. Our Supreme Court has declined to "extrapolate[ ] the *Batson* framework to for-cause strikes," applying that analysis only to peremptory strikes by the state. *DeVaughn*, supra at 477 (2) (citations and punctuation omitted). We also are not persuaded by Pennington's argument that the trial court's decision violated the Georgia Constitution's provision that "[n]o inhabitant of this state shall be . . . prohibited from holding any public office or trust on account of religious opinions." Ga. Const. of 1983, Art. I, Sec. I, Par. IV. Pennington cites to no authority, and we have found none, holding that this provision forbids a trial court from striking for cause a prospective juror who the trial court believes cannot be fair and impartial.

3. *Jury charge.*

Pennington argues that the trial court erred by failing to instruct the jury pursuant to OCGA § 16-13-32.4 (g), which provides for an affirmative defense to

prosecution for possession with intent to distribute of a controlled substance near a school. Our Supreme Court, however, has held that "to assert an affirmative defense, a defendant must admit the act, or he is not entitled to a charge on that defense." *McLean v. State*, 297 Ga. 81, 83 (2) (772 SE2d 685) (2015) (citation and punctuation omitted). But see *McClure v. State*, __ Ga. App. __, __ (__ SE2d __) (Case No. A18A0324, decided June 21, 2018) (McFadden, P. J., concurring in part and dissenting in part) (raising concerns about requirement that defendant admit act to obtain charge on affirmative defense). Because Pennington did not admit that he possessed with intent to distribute methamphetamine near a school, he was not entitled to the affirmative defense set forth in OCGA § 16-13-32.4 (g).

*Judgment affirmed. Ray and Rickman, JJ., concur*.